Green, J.
delivered the opinion of the court.
This is an action brought by the Union Bank, as the holder of a note for $4224 42, drawn by Yerger, Shall & Co. payable to Chaffin, Kirk & Co. and by them endorsed, and also endorsed by Thomas Gregory and'the defendant Osborne. On the *414 trial there was evidence conducing to prove that Osborne endorsed the note for the accommodation of Chaffin, Kirk & Co. It was also proved, that John Kirk had endorsed the note in the name of Chaffin, Kirk & Co. he being one of the partners of that firm. There was evidence that, before the Bank discounted the note, a publication had been made in several gazettes announcing the dissolution of the partnership of Chaffin, Kirk & Co. and that the Bank was a subscriber for one of these gazettes, and that the cashier of the Bank had knowledge of the dissolution.
The court charged the jury, among other things, that “If the jury should believe that the firm of Chaffin, Kirk & Co. was dissolved before the defendant endorsed the note, and that the plaintiff had a knowledge or notice of that fact; and if the jury should farther believe that the defendant was an accommodation endorser on the paper and the plaintiff knew that he was an accommodation endorser, and that the defendant did not know of the dissolution of the firm of Chaffin, Kirk & Co. at the time he endorsed the note, that in that case the plaintiff took the same in fraud of the rights of the defendant, and could not therefore recover against the defendant upon said endorsement:” that “if the plaintiff knew of the dissolution of Chaf-fin, Kirk & Co. at the time they discounted the note, and that the defendant was an accommodation endorser on it, they were bound to communicate that knowledge to the defendant before they took the paper, unless the jury should believe, from the proof in the cause, that the defendant had notice of that dissolution at the time the plaintiff discounted it.”
Several questions have been elaborately debated at the bar in this case, but we do not deem it necessary to enter into an examination of all the points which have been made by counsel. As to whether the mere concealment of facts extrinsic of .a contract, which may affect the interest of the other party, will constitute fraud, in a legal sense, so as to vitiate the contract, jurists are not agreed. Unquestionably, 'a high morality requires that we should disclose to a person, with whom we are about to make a contract, every fact touching the article which is the subject of the contract — which affects its value, and *415 which we have reason to believe the other party does not know. A corn merchant, who arrives with a cargo at port in a time of scarcity, ought, perhaps, before he sells his corn for the highest price he can obtain, to disclose the fact' that there were many other vessels loaded with corn on the way; because he ought not to prefer his interest to the interest of his neighbor, so as to make an advantage to himself by the losses of others. But no writer has ever supposed that such a system of morality as this can be enforced in a civil forum. Chief Justice Marshall said, in the case of Laidlaw vs. Organ, (2 Wheat. 178,) that a party was not bound to communicate extrinsic circumstances which would influence the price of a commodity, though the facts were exclusively within his knowledge: “But at the same time each party must take care not to say or do any thing calculated to impose on the other. It would be very difficult to circumscribe the contrary doctrine within proper limits, where the means of intelligence are accessible to both parties.” The interests of commerce require that parties shall not be permitted to set aside their contracts with too much facility.
It would be difficult, therefore, to maintain the doctrine of the charge of his honor the Circuit Judge, if the decision of this case depended upon our judgment upon this question. But from the evidence in the case, there was no ground for assuming the probable ignorance of the defendant, of the dissolution of the firm of Chaffin, Kirk & Co. at the time he endorsed the note in question. The fact of the dissolution had been published in several gazettes. There is no evidence that the defendant had been a previous dealer with the firm; and if he had not, publication of the dissolution in a gazette, as a matter of law, was constructive notice to him. If the Bank had obtained knowledge of the dissolution, by means of the publication in the gazettes, what right had they to suppose that the defendant, to whom the same sources of information were accessible, had remained in ignorance of the fact? And how can the plaintiff be chargeable with fraud, for failing to communicate that which the gazettes had announced, and which there was every reason to suppose the defendant already knew? But the defendant is reduced to this dilemma. He either knew *416 the fact of dissolution, or he did not know it. If he knew it, the failure of the Bank to communicate the knowledge could not affect him, and consequently could be no fraud upon him. If he did not know it, then the existence of the fact could not prevent a recovery by him against all the partners; and consequently, as he could experience no loss in consequence of his ignorance of the fact, the failure to communicate it could be no fraud upon him.
It will not do for the defendant Osborne to assume, in behalf, of the partners of Kirk, that they may be made liable thus by circuity, when. they could have resisted a recovery against them by the Bank. Osborne has nothing to do with the consequences to other parties. If he has all the remedies which he supposed he had, when he endorsed the paper, he had no right to complain. He is in the predicament in which he chose to place himself, and in which he expected to stand. The consequences upon others can be no fraud upon Mm. The statement of the proposition, presents the question in a light too clear to admit of an argument. The case of Livingston vs. Hastil, (2 Caines’ R. 249,) is opposed to this view of the case. But the part of the case applicable to this point received but little attention in the opinion of the court; and is so manifestly opposed to principle, that we feel no embarrassment in disregarding it.
The question is one of fraud, as between the plaintiff and defendant, and yet the court made the effect which is to be produced on a remote party, exonerate the defendant, although' they admit his. remedies would be as complete as though all the parties had been liable to the holder.
Surely this can have nothing to do with the question whether the defendant has been defrauded.
The' other cases cited from the New-York reports, so far as they effect this question, refer to the case of Livingston vs. Hostel, and rest wholly upon its authority.
For these reasons we think there is error in the judgment of the Circuit Court, and that it must be reversed and the case remanded for another trial.